# No. 22-87

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

Gia Sessa, *on behalf of herself and all others similarly situated*,

Plaintiff-Appellant,

*v.*

Trans Union, LLC,

Defendant-Appellee.

On Appeal from the United States District Court
for the Southern District of New York
Hon. Kenneth M. Karas
Case No. 7:19-cv-9914

**Brief of Amici Curiae
Consumer Financial Protection Bureau
and the Federal Trade Commission
in Support of Plaintiff-Appellant and Reversal**

Joel Marcus
  *Deputy General Counsel*
FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3350
jmarcus@ftc.gov

Seth Frotman
  *General Counsel*
Steven Y. Bressler
  *Acting Deputy General Counsel*
Laura Hussain
  *Assistant General Counsel*
Ryan Cooper
  *Counsel*
CONSUMER FINANCIAL
  PROTECTION BUREAU
1700 G Street NW
Washington, DC 20552
(202) 702-7541
ryan.cooper@cfpb.gov

# TABLE OF CONTENTS

TABLE OF CONTENTS .........................................................................i

TABLE OF AUTHORITIES..................................................................iii

INTEREST OF AMICI CURIAE......................................................... 1

STATEMENT .....................................................................................3

    A.  The FCRA ............................................................................3

    B.  Facts..................................................................................5

    C.  Procedural History...........................................................7

SUMMARY OF ARGUMENT................................................................9

ARGUMENT ....................................................................................11

I.   The FCRA Does Not Distinguish Between Factual and Legal
     Accuracy. ...................................................................................11

    A.  The FCRA does not contain an exception for legal
        inaccuracies. ............................................................. 13

    B.  It is difficult and arbitrary to distinguish between factual
        and legal accuracy................................................... 15

    C.  The district court's arguments for importing a
        legal/factual distinction into the FCRA are unpersuasive........20

    D.  Any inaccuracy in a consumer report, whether factual or
        legal, is sufficient to serve as a predicate element of
        FCRA liability.......................................................... 22

II.  The FCRA Requires Credit Reporting Agencies to Maintain
     Reasonable Procedures to Assure the Accuracy of
     Information Provided by Furnishers............................................23

    A.  Information provided by a furnisher is not *per se*
        accurate. ..................................................................24

B.  Reliance on a furnisher to provide accurate information is not *per se* reasonable.........................................................28

CONCLUSION ...................................................................... 31

# TABLE OF AUTHORITIES

**Cases**                                                   **Page(s)**

*Amorah v. Equifax Info. Servs., LLC*,
No. 19 CV 7534, 2020 WL 6565220 (N.D. Ill. Nov. 9, 2020)..................19

*Batterman v. BR Carroll Glenridge, LLC*,
829 F. App'x 478 (11th Cir. 2020) ........................................................15

*Cable News Network, Inc. v. FBI*,
293 F. Supp. 3d 59 (D.D.C. 2018)..........................................................21

*Chuluunbat v. Experian Info. Sols., Inc.*,
4 F.4th 562 (7th Cir. 2021)........................................................18, 19, 23

*Collins v. Experian Credit Reporting Serv.*,
494 F. Supp. 2d 127 (D. Conn. 2007)......................................................12

*Cornock v. Trans Union LLC*,
638 F. Supp. 2d 158 (D.N.H. 2009)........................................................18

*Cortez v. Trans Union*, LLC,
617 F.3d 688 (3d Cir. 2010) .........................................................*passim*

*Crabill v. Trans Union, L.L.C.*,
259 F.3d 662 (7th Cir. 2001)..................................................................31

*Dalton v. Cap. Associated Indus., Inc.*,
257 F.3d 409 (4th Cir. 2001)...................................................................11

*Denan v. Trans Union LLC*,
959 F.3d 290 (7th Cir. 2020) ..................................................................14

*Frydman v. Experian Info. Sols., Inc.*,
2016 WL 11483839 (S.D.N.Y. Aug. 11, 2016) ........................................27

*Galper v. JP Morgan Chase Bank, N.A.*,
802 F.3d 437 (2d Cir. 2015) ..................................................................... 4

*Gorman v. Experian Info. Solutions, Inc.*,
2008 WL 4934047 (S.D.N.Y. Nov. 19, 2008) ...................................13, 30

*Grayson v. Equifax Credit Info. Servs.*,
2021 WL 2010398 (E.D.N.Y. Jan. 29, 2021) .......................................... 22

*Houston v. TRW Info. Servs., Inc.*,
707 F. Supp. 689 (S.D.N.Y. 1989) ........................................................ 30

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*,
729 F.3d 99 (2d Cir. 2013) ................................................................. 16

*Koropoulous v. Credit Bureau, Inc.*,
734 F.2d 37 (D.C. Cir. 1984) .............................................................. 12

*Mora-Meraz v. Thomas*,
601 F.3d 933 (9th Cir. 2010) .............................................................. 21

*Ogbon v. Beneficial Credit Servs., Inc.*,
2013 WL 1430467 (S.D.N.Y. Apr. 8, 2013) ........................................... 13

*Philbin v. TransUnion Corp.*,
101 F.3d 957 (3d Cir. 1996) ............................................................... 13

*Pullman-Standard v. Swint*,
456 U.S. 273 (1982) .......................................................................... 17

*Rodas v. Experian Info. Sols., Inc.*,
2020 WL 4226669 (N.D. Ill. July 23, 2020) .......................................... 23

*Sarver v. Experian Info., Sols.*,
390 F.3d 969 (7th Cir. 2004) ......................................................... 29, 31

*Sessa v. Linear Motors, LLC*,
No. 19-cv-9914, 2021 WL 6052134 (S.D.N.Y. Dec. 20, 2021) ......... *passim*

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........................................................................... 3

*Twumasi-Ankrah v. Checkr, Inc.*,
954 F.3d 938 (6th Cir. 2020) .............................................................. 14

*United States v. Pornes-Garcia*,
171 F.3d 142 (2d Cir. 1999) ............................................................... 21

*Walton v. BMO Harris Bank N.A.*,
761 F. App'x 589 (7th Cir. 2019) ........................................................ 12

iv

*Watson v. Caruso*,
    424 F. Supp. 3d 231 (D. Conn. 2019)................................ 26, 30

*Wenning v. On-Site Manager, Inc.*,
    2016 WL 3538379 (S.D.N.Y. June 22, 2016)......................22, 30

*Wilson v. Corelogic SafeRent, LLC*,
    2017 WL 4357568 (S.D.N.Y. Sept. 29, 2017)................... 26, 30

*Wright v. Experian Info. Sols., Inc.*,
    805 F.3d 1232 (10th Cir. 2015)................................... 29

## Statutes

15 U.S.C. § 45(a)..................................................................1

15 U.S.C. § 1681..................................................................1

15 U.S.C. § 1681(a)(1)......................................................... 3

15 U.S.C. § 1681a(d)(1)........................................................ 4

15 U.S.C. § 1681a(f)............................................................ 4

15 U.S.C. § 1681e(b).................................................*passim*

15 U.S.C. § 1681i(a)(1)(A)..............................................11, 15

15 U.S.C. § 1681n(a)........................................................... 5

15 U.S.C. § 1681n(1)(A)........................................................ 5

15 U.S.C. § 1681*o* ........................................................ 5, 12

15 U.S.C. § 1681s-2(a)(8)(A)...............................................21

15 U.S.C. § 1681s(a)........................................................ 1, 2

15 U.S.C. § 1681s(e)............................................................1

15 U.S.C. § 1681s(a)-(c).......................................................1

## Regulations

12 C.F.R. § 1022.41(a) .................................................................. 20

12 C.F.R. § 1022.41(a)(1) .............................................................. 20

12 C.F.R. § 1022.42(a) .................................................................. 20

## Other Authorities

Consumer Fin. Prot. Bureau, *List of Consumer Reporting Companies,*
    https://go.usa.gov/xu9Y9 ...................................................... 6

Consumer Fin. Prot. Bureau, *Consumer Response Annual Report*
    (March 2022), https://go.usa.gov/xudGS .............................. 3

Consumer Fin. Prot. Bureau, *TransUnion*, https://go.usa.gov/xu9Ye ........ 6

Fed. Trade. Comm'n, *40 Years of Experience with the Fair Credit
    Reporting Act: An FTC Staff Report with Summary of Interpretations*
    (2011), https://go.usa.gov/xupMd ...................................... 29

Merriam-Webster Dictionary, https://www.merriam-
    webster.com/dictionary/accurate ..................................... 25

S. Rep. No. 91-517 (1969) ........................................................... 4

## INTEREST OF AMICI CURIAE

To ensure fair and accurate credit reporting, the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq*., imposes various requirements that consumer reporting agencies (CRAs) must follow when they compile and disseminate personal information about individuals. Relevant here, section 1681e(b) of the FCRA requires CRAs to "follow reasonable procedures to assure maximum possible accuracy" of the information contained in consumer reports.

The Consumer Financial Protection Bureau (Bureau) has exclusive rule-writing authority for most provisions of the FCRA. 15 U.S.C. § 1681s(e). The Bureau interprets and, along with various other federal and state regulators, enforces the law's requirements. *Id*. § 1681s(a)-(c). These requirements include section 1681e(b)'s mandate that CRAs follow reasonable procedures to assure the maximum possible accuracy of the information contained in consumer reports.

The Federal Trade Commission has been charged by Congress with the mission to protect consumers from deceptive or unfair trade practices. 15 U.S.C. § 45(a). As part of that mission, the Commission has long played a key role in the implementation, enforcement, and interpretation of the FCRA. A violation of the FCRA "constitute[s] an unfair or deceptive act or

practice in commerce, in violation of section 5(a) of the Federal Trade Commission Act." 15 U.S.C. § 1681s(a). And the FCRA grants the Commission "such procedural, investigative, and enforcement powers . . . as though the applicable terms and conditions of the Federal Trade Commission Act were part of [the FCRA]." *Id.*

The district court adopted an unduly narrow interpretation of section 1681e(b)'s reasonable-procedures requirement. To hold a CRA liable under section 1681e(b), a private plaintiff must show, as one element of the claim, that inaccurate information was included in his or her consumer report. The district court held that the information in a consumer report is accurate (and therefore plaintiff did not show this element of section 1681e(b) liability) so long as any inaccuracies can be characterized as "legal" rather than "factual" in nature. It also held that the information in a consumer report is accurate so long as that information was reported by the CRA as it was provided by a furnisher, i.e. an entity that provides information relating to consumers to CRAs for inclusion in consumer reports.

In addition to being unsupported by the statutory text, these holdings would substantially curtail section 1681e(b)'s reasonable-procedures requirement and undermine the remedial purpose of that

provision, which is to ensure accurate credit reporting. The private right of action to enforce section 1681e(b) is an important supplement to government enforcement, conserving limited government enforcement resources and creating an effective deterrent to violations of law. If this Court were to adopt such an unduly narrow reading of "accuracy" for purposes of a 1681e(b) claim, it could result in increased inaccuracy in credit reporting and inaccurate information about consumers being conveyed to lenders, landlords, employers, and other entities that purchase consumer reports. A likely consequence would be an increase in the volume of consumer complaints related to credit reporting that the Bureau receives and is required to address.[1] For all these reasons, the Bureau and the FTC have a substantial interest in the issues presented in this case.

## STATEMENT

### A.    The FCRA

"The FCRA seeks to ensure 'fair and accurate credit reporting.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 334 (2016) (quoting 15 U.S.C. §

---

[1] In 2021, the Bureau received and addressed over 700,000 consumer complaints related to credit reporting. Consumer Fin. Prot. Bureau, *Consumer Response Annual Report* 11 (March 2022), https://go.usa.gov/xudGS. These complaints constituted 71% of all the consumer complaints received by the Bureau and a 122% annual increase since 2020. *Id.*

1681(a)(1)). It was enacted by Congress to "prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517, at 1 (1969); *see also Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 444 (2d Cir. 2015) ("The FCRA was enacted in 1970 amidst concerns about the accuracy of information disseminated by credit reporting agencies.").

To that end, the FCRA regulates consumer reporting agencies (CRAs), which includes any entity that, in exchange for monetary fees, "regularly engages ... in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties." 15 U.S.C. § 1681a(f). With exceptions not relevant here, a "consumer report" is a CRA's "communication of any information ... bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living" if that communication "is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for" specified purposes, including employment, credit, and insurance. *Id.* § 1681a(d)(1).

The FCRA imposes a variety of requirements on CRAs. As relevant here, it requires that "[w]henever a [CRA] prepares a consumer report it

shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." *Id.* § 1681e(b).

If a CRA "willfully fails to comply with any requirement" of the FCRA, it may be held liable by a private plaintiff for actual damages "of not less than $100 and not more than $1000" per consumer. *Id.* § 1681n(a), (1)(A). If a CRA negligently violates a provision of the FCRA, it may be held liable for the actual damages arising from the violation. *Id.* § 1681*o*.

## B.     Facts

Plaintiff-Appellant Gia Sessa leased a Subaru Forrester from Linear Motors d/b/a Curry Hyundai Subaru in November 2018. The lease was financed by Hudson Valley Federal Credit Union ("Hudson Valley"). Under the lease, Sessa was required to pay $237.75 per month, and the "total of payments," i.e. the full amount that Sessa was obligated to pay by the end of the lease, was $12,721.25. At the end of the 36-month lease, assuming all payments were made, Sessa had the option to purchase the vehicle for its "residual value," i.e., the value of the vehicle at the end of the lease, in addition to certain fees. The lease states that the "residual value" of the vehicle was $19,444.07. Sessa was not required to purchase the vehicle at the end of the lease.

Defendant-Appellee Trans Union, LLC ("TransUnion") is one of three nationwide consumer reporting agencies, which compile and sell consumer reports. *See* Consumer Fin. Prot. Bureau, *List of Consumer Reporting Companies* (last visited May 4, 2022), https://go.usa.gov/xu9Y9. TransUnion sells consumer reports to a wide variety of entities such as lenders, employers, landlords, and insurance companies. *Id.* These entities use the information in the consumer reports to inform decisions such as whether the consumer is eligible for credit, employment, housing, or insurance. *Id.* The consumer reports compiled and sold by TransUnion include, among other information, the consumer's payment obligations and payment history on loans and other financial products, such as the automotive lease at issue in this case. *See* Consumer Fin. Prot. Bureau, *TransUnion* (last visited May 4, 2022), https://go.usa.gov/xu9Ye.

Hudson Valley furnished data to TransUnion pertaining to Sessa's automotive lease. That data indicated she owed a "balloon payment" of $19,440 due on January 1, 2022. In fact, that amount was the "residual value" of the vehicle leased by Sessa, which she was not obligated to pay.

In December 2018, Sessa discovered that her TransUnion consumer report showed that she owed a balloon payment on the lease. Sessa contacted the dealership and the lease assignees, who confirmed that she

did not owe a balloon payment. TransUnion's records indicate that it issued thirteen consumer reports concerning Sessa that contain the allegedly erroneous balloon payment information.

## C.    Procedural History

On October 25, 2019, Sessa filed a putative class action lawsuit in the Southern District of New York against TransUnion.[2] Sessa alleged that TransUnion violated section 1681e(b) of the FCRA when it inaccurately reported that she owed a $19,440 balloon payment at the end of her lease. In a motion for summary judgment, TransUnion argued that it is not obligated to resolve a legal challenge to the validity of the balloon payment obligation reported by Hudson Valley and that it reasonably relied on Hudson Valley to report accurate information. TransUnion also argued that even if it did violate section 1681e(b), Sessa was not entitled to damages because the violation was neither willful nor negligent.

The district court granted summary judgment to TransUnion. *See Sessa v. Linear Motors, LLC,* No. 19-cv-9914, 2021 WL 6052134, at *3 (S.D.N.Y. Dec. 20, 2021). The court held that Sessa had failed to make the "threshold showing" of inaccuracy. *Id.* at *6. In the court's view, the

---

[2] The complaint also named Linear Motors, LLC, Hudson Valley Federal Credit Union, and CULA, LLC as defendants. These companies later settled, and the claims asserted against them are not at issue in this appeal.

information in the consumer report indicating that Sessa owed a balloon payment at the end of her lease was accurate, and TransUnion was thus entitled to summary judgment because "reporting accurate information absolves a CRA of liability." *Id.* at *6.

The court determined that the consumer report's representation that Sessa owed a balloon payment at the end of the lease was accurate for two reasons. First, the court drew a distinction between factual and legal inaccuracies and held that "CRAs cannot be held liable when the accuracy at issue requires a legal determination as to the validity of the debt the agency reported." *Id.* at *8. In the court's view, whether Sessa in fact owed a balloon payment at the end of the lease was a "legal dispute" that requires "a legal interpretation of the loan's terms." *Id.* at *10. The court reached its holding despite acknowledging that the FCRA itself "does not ... draw a line between factual and legal accuracy," and that the Second Circuit has never "explicitly adopt[ed]" this distinction. *Id.* at *6-7 (quotations omitted).

Second, the court concluded that the information in Sessa's credit report was factually accurate "because TransUnion reported the exact information it received from a data furnisher." *Id.* at *9. The court emphasized that Sessa "admits that the data Hudson Valley furnished to TransUnion indicated that [Sessa] owed a balloon payment of $19,444.00."

*Id.* at *9 (cleaned up). In the court's view, "[t]his fact alone sustains TransUnion's argument" and is all TransUnion needs to "absolve itself of FCRA liability." *Id.*

On January 13, 2022, Sessa appealed.

## SUMMARY OF ARGUMENT

The FCRA requires CRAs to follow reasonable procedures to assure maximum possible accuracy of the information included in consumer reports. To hold a CRA liable for a reasonable-procedures violation, a private plaintiff must show as a threshold matter that his or her consumer report contains an inaccuracy. The district court's opinion endorses a definition of inaccuracy that is not supported by the statute, risks exposing consumers to more inaccurate credit reporting, and thereby undercuts the remedial purpose of the FCRA. The district court erred in two key respects.

First, the district court held that the FCRA is concerned only with "factual," not "legal" inaccuracies. There is no support in the text of the statute for this reading. And importing a factual/legal distinction into the FCRA is likely to prove unworkable in practice. Indeed, this case illustrates the difficulty courts face in trying to distinguish factual and legal inaccuracies. TransUnion erroneously reported that Sessa owed a balloon payment at the end of her vehicle lease and drastically overstated the

amount she owed on the lease. The district court held that this inaccuracy should be characterized as "legal" simply because it implicates the terms of the contract. But whether Sessa owes a balloon payment and how much she owes are straightforward questions about the nature of her debt obligations. This Court should thus clarify that any incorrect information in a consumer report, whether "legal" or "factual" in character, constitutes an inaccuracy that triggers reasonable-procedures liability under the FCRA.

Second, the district court held that a consumer report is factually accurate so long as the CRA correctly reports the information it received from a furnisher, regardless of whether that underlying information is actually correct. However, the FCRA requires procedures to assure "accuracy," and the fact that a CRA obtains information from another source simply does not mean that the information is free from error. This Court should clarify that a CRA's reliance on information provided by even a reputable furnisher does not categorically insulate the CRA from reasonable-procedures liability under the FCRA.

For these reasons, this Court should reverse the district court's holding that Sessa failed to satisfy her threshold burden of showing that her consumer report contained an inaccuracy.

**ARGUMENT**

## I. The FCRA Does Not Distinguish Between Factual and Legal Accuracy.

Section 1681e(b) of the FCRA requires that "[w]henever a [CRA] prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." Congress believed "that in too many instances agencies were reporting inaccurate information," and worried that inaccurate credit reporting "can literally ruin [a person]'s reputation without cause." *Dalton v. Cap. Associated Indus., Inc.*, 257 F.3d 409, 414 (4th Cir. 2001). Thus, "[i]n enacting [the] FCRA, Congress adopted a variety of measures designed to insure that agencies report accurate information." *Id.* at 414–15. Among those measures, section 1681e(b) plays an important role because it uniquely places an affirmative obligation on CRAs to undertake reasonable procedures to assure the accuracy of the information in consumer reports, a duty that exists separately from their obligations when a consumer identifies or disputes an inaccuracy. *Compare* 15 U.S.C. § 1681e(b) (requiring CRAs to adopt reasonable procedures to assure the accuracy the maximum possible accuracy of information in consumer reports) *with id.* § 1681i(a)(1)(A) (requiring CRAs to

reinvestigate the accuracy of information in a consumer report when disputed by the consumer).

In order to hold a CRA liable under section 1681e(b), most courts have held that a private plaintiff must make a threshold showing that the CRA reported inaccurate information.[3] *See, e.g.*, *Walton v. BMO Harris Bank N.A.*, 761 F. App'x 589, 591 (7th Cir. 2019) (holding that a CRA "cannot be liable as a threshold matter if it did not report inaccurate information"); *Collins v. Experian Credit Reporting Serv.*, 494 F. Supp. 2d 127, 135 (D. Conn. 2007) ("Every circuit to consider the question has agreed that this threshold showing is fundamental to the success of a claim under § 1681e(b)."). The district court granted TransUnion summary judgment on this threshold question. *See Sessa*, 2021 WL 6052134, at *10. Accordingly, the court never reached the ultimate question of whether TransUnion

---

[3] Courts have generally held that private plaintiffs are required to show an inaccuracy in their report because under section 1681*o*(1) of the FCRA, a private cause of action is authorized "with respect to any consumer … [for] an amount equal to … any actual damages sustained by the consumer as a result of the failure." "Read together, these provisions allow a consumer to bring suit for a violation of section 1681e(b) only if a credit reporting agency issues an inaccurate report on the consumer, since only then does harm flow from the agency's violation." *Koropoulous v. Credit Bureau, Inc.*, 734 F.2d 37, 39 (D.C. Cir. 1984)). This requirement does not apply to government suits for section 1681e(b) violations since the government is not required to show injury.

utilized reasonable procedures to assure the accuracy of the information it reports about consumers.[4] The district court's decision was erroneous because it rested on an atextual reading of the statute and would be impossible to implement in practice.

## A. The FCRA does not contain an exception for legal inaccuracies.

The district court adopted an exceedingly narrow view of what constitutes an inaccuracy for purposes of the FCRA. Specifically, it held "that accuracy with respect to FCRA claims applies to factual but not legal accuracy." *Id.* at *7. The factual/legal distinction undergirding the district court's holding finds no support in the text of the statute. Section 1681e(b) references "accuracy" generally, and there is no textual basis to conclude that Congress intended that term to be limited to factual accuracy. As the district court acknowledged, "[s]ection 1681e(b) does not … draw a line

---

[4] Nor did the Court reach the other elements of a reasonable-procedures claim. In addition to showing an inaccuracy, courts have held that a plaintiff asserting a claim under section 1681e(b) must show: "(1) the consumer reporting agency was negligent in that it failed to follow reasonable procedures to assure the accuracy of its credit report; … (3) the plaintiff was injured; and (4) the consumer reporting agency's negligence proximately caused the plaintiff's injury." *Ogbon v. Beneficial Credit Servs., Inc.*, No. 10-cv-3760, 2013 WL 1430467, at *6 (S.D.N.Y. Apr. 8, 2013) (quoting *Gorman v. Experian Info. Solutions, Inc.*, No. 07-cv-1846, 2008 WL 4934047, at *4 (S.D.N.Y. Nov. 19, 2008)); *see also Philbin v. TransUnion Corp.*, 101 F.3d 957, 963 (3d Cir. 1996) (same).

between factual and legal accuracy." *Sessa*, 2021 WL 6052134, at *6 (quoting *Denan v. Trans Union LLC*, 959 F.3d 290, 294 (7th Cir. 2020).

The law requires CRAs to have "reasonable procedures" with respect to accuracy, without exception. Of course, what constitutes "reasonable procedures" may vary from situation to situation. Accordingly, there is little reason to believe that it is somehow impossible for CRAs to have such procedures with respect to legal accuracy. This Court should not endorse a judge-made exception to the statute's plain text.

Moreover, the statute states that CRAs must "assure *maximum possible* accuracy." 15 U.S.C. § 1681e(b) (emphasis added). "[T]he distinction between 'accuracy' and 'maximum possible accuracy' is ... quite dramatic." *Cortez v. Trans Union*, LLC, 617 F.3d 688, 709 (3d Cir. 2010). The use of the phrase "maximum possible accuracy" thus "suggests that Congress wanted to hold CRAs to a higher standard than mere technical accuracy." *Twumasi-Ankrah v. Checkr, Inc.*, 954 F.3d 938, 942 (6th Cir. 2020). By holding that a so-called legal inaccuracy cannot serve as the plaintiff's predicate for a section 1681e(b) violation, the district court ignored the statute's clear textual indication that Congress intended CRAs to be held to a high standard of accuracy and that the scope of inaccuracies that trigger reasonable-procedures liability should be read expansively.

Indeed, as discussed below, the accuracy of a consumer report often turns on questions of contractual interpretation that can be plausibly characterized as legal, such as how much is owed, to whom, by when and for what reason. Failing to hold CRAs accountable for these sorts of inaccuracies in how they report a consumer's debt obligations fails to fulfill the FCRA's command that CRAs strive to assure "maximum possible accuracy."

Notwithstanding the absence of any factual/legal distinction in the text of the statute, some courts have concluded that the FCRA is unconcerned with or applies a different standard to so-called "legal" inaccuracies. *E.g.*, *Batterman v. BR Carroll Glenridge, LLC*, 829 F. App'x 478, 481 (11th Cir. 2020). However, as the district court acknowledged, this Court has never "explicitly adopt[ed] this view." *Sessa*, 2021 WL 6052134, at *7. Nor should it do so here. Distinguishing between factual and legal inaccuracy is in practice impossible, and this case illustrates the conceptual flaws inherent in the factual/legal distinction that the district court imported into section 1681e(b) of the FCRA.

### B.  It is difficult and arbitrary to distinguish between factual and legal accuracy.

In addition to lacking a statutory basis, this Court should reject the district court's reliance on a distinction between factual and legal

inaccuracy because it will prove unworkable in practice and undermine the purpose of the statutory regime. Many, if not all, inaccuracies in consumer reports could be characterized as legal, which would create an exception that would swallow the rule, effectively rendering section 1681e(b) a nullity. Consumer reports generally include information about an individual's debt obligations. Yet, debts are creatures of contract. Thus, any inaccurate representation pertaining to an individual's debt obligations could arguably be characterized as a legal inaccuracy insofar as determining the truth or falsity of the representation requires contractual interpretation. *Cf. Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 107 (2d Cir. 2013) (explaining that a question of "contractual interpretation ... is a question of law").

This case illustrates the difficulty of distinguishing between factual and legal inaccuracy. TransUnion erroneously reported that Sessa owed a $19,444 balloon payment at the end of the lease. In fact, that figure is the "residual value" of the vehicle, an amount Sessa was not obligated to pay. The lease is unambiguous: Nothing in its text suggests the "residual value" of the vehicle is an amount due by Sessa. To the contrary, it defines "residual value" simply as "the Value of the vehicle at the end of Lease used in calculating my Base Monthly Rent." And, it sets the "total of payments"

due by Sessa at $12,721.25, an amount vastly less than the $19,444 balloon payment that Sessa purportedly owed. Put simply, TransUnion erroneously reported that Sessa owed an amount she did not owe. A more basic, straightforward inaccuracy is hard to imagine.

But TransUnion argued and the district court concluded that this inaccuracy was legal, not factual, because it implicated "a contractual dispute." *Sessa*, 2021 WL 6052134, at *9 (quotation omitted). It is true that determining whether Sessa owed a $19,444 balloon payment requires reading and interpreting the contract. Beyond this, there is no basis to characterize the error as legal. The district court's reasoning appears to be that any inaccuracy pertaining to a contract must implicate a contractual dispute and all contractual disputes are legal, not factual. But this understanding of what constitutes a legal inaccuracy could encompass nearly any inaccuracy pertaining to a debt instrument.

Put simply, whether an inaccuracy is legal or factual depends entirely on how those terms are defined. Indeed, courts have long "noted the vexing nature of the distinction between questions of fact and questions of law." *Pullman-Standard v. Swint*, 456 U.S. 273, 288 (1982). It is no surprise then that courts that have erroneously attempted to do so have struggled to distinguish between factual and legal inaccuracy in the FCRA context.

For example, in *Cornock v. Trans Union LLC*, 638 F. Supp. 2d 158 (D.N.H. 2009), the court considered whether the plaintiff's allegation that a credit card account was fraudulently opened in his name implicated factual or legal accuracy. The court explained that the plaintiff's challenge to the debt "could be called 'factual' in the sense that ... he did not sign the credit card application as a matter of fact," but, on the other hand, "it could also be called 'legal' in the sense that ... he claimed that he therefore had no liability as a matter of law." *Id.* The court's difficulty disentangling factual disputes from legal question led it to observe that "classifying a dispute over a debt as 'factual' or 'legal' will usually prove a frustrating exercise." *Id.* at 163. The court ultimately concluded that distinguishing "between a 'factual' and a 'legal' inaccuracy" for FCRA purposes is "unworkable." *Id.* at 164.

Other courts, too, have found distinguishing between factual and legal accuracy to be a daunting task. In *Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562 (7th Cir. 2021), the Seventh Circuit considered a set of seven consolidated FCRA cases in which plaintiffs claimed they did not owe certain debts to the creditors listed on their consumer reports because the debts had purportedly been assigned to other companies. The district courts offered different reasoning and conclusions in each of the cases: two of the courts determined that ownership of a debt was a question of law,

one decided that ownership of a debt was a mixed question of law and fact, and four "eschewed a rigid distinction between law and fact and focused on the institutional competency of the [CRAs] to resolve the claims." *Id.* at 566.

It is telling that four courts considering the same set of facts were unable to resolve whether a consumer report that misidentifies the owner of a debt is factually or legally inaccurate. As one of those courts explained, "[l]abeling an issue as one of fact, one of law, or a mix of the two is not always simple." *Amorah v. Equifax Info. Servs., LLC*, No. 19 CV 7534, 2020 WL 6565220, at *2 (N.D. Ill. Nov. 9, 2020). It concluded, perplexingly, that the same question may be factual in one context but legal in another. *Id.* at *3. For example, whether a right has been assigned may be a factual question in the breach-of-contract context, but somehow a legal question in the FCRA context. *Id.* That court ultimately decided that "labeling debt ownership in the abstract as an issue of fact, a mixed question, or a question of law is beside the point." *Id.* at *3 (emphasis added).

As these cases illustrate, the factual/legal distinction adopted by the district court is not only without any basis in the statutory text, but it invites CRAs and furnishers to skirt their legal obligations by characterizing inaccuracies as "legal" (as evidenced in this case), while confusing rather

than clarifying the scope of liability under section 1681e(b) of the FCRA. This court should thus decline to endorse such a distinction.

## C. The district court's arguments for importing a legal/factual distinction into the FCRA are unpersuasive.

The district court offers two justifications for reading "accuracy" in section 1681e(b) to mean only factual accuracy, not legal accuracy. Neither is persuasive.

First, the court observed that under the FCRA's implementing regulations "only furnishers are tasked with accurately reporting liability" whereas "CRAs are bound by no comparative duty." *Sessa*, 2021 WL 6052134, at *7. It is true that those regulations compel furnishers to adopt "written policies and procedures regarding the accuracy and integrity of the information relating to consumers that it furnishes to a [CRA]." 12 C.F.R. § 1022.42(a). Those regulations also define "accuracy" with respect to furnishers to mean, among other things, that the information "correctly[] [r]eflects the terms of and liability for the account or other relationship." *Id.* § 1022.41(a), (1). The district court reasoned that "having charged a furnisher with duty to review the legal validity of a debt ... the CFPB clearly knew what language would charge CRAs with an identical duty." *Sessa*, 2021 WL 6052134.

The FCRA's framework, however, places responsibilities for accuracy on *both* the CRA and the furnisher. There is no inconsistency between imposing a duty of accurately reporting liabilities on furnishers, while also imposing duties on CRAs to help identify, investigate, and correct inaccuracies when the furnisher fails to do. *See, e.g.*, 15 U.S.C. § 1681e(b); § 1681i(a)(1)(A). The Bureau's regulatory silence as to the meaning of "accuracy" as it pertains to CRAs has no bearing on the proper interpretation of section 1681e(b). *E.g.*, *Mora-Meraz v. Thomas*, 601 F.3d 933, 941 (9th Cir. 2010) ("We also may not read into the agency's silence and make inferences thereupon."); *Cable News Network, Inc. v. FBI*, 293 F. Supp. 3d 59, 75 (D.D.C. 2018) ("[T]he agency's silence is just that — silence."). If anything, the regulatory definition of "accuracy" as it pertains to furnishers should be read to apply to CRAs as well. *E.g.*, *United States v. Pornes-Garcia*, 171 F.3d 142, 147 (2d Cir. 1999) ("Normally, the same term appearing in different portions of a single act is taken to have the same meaning in each appearance.").[5]

---

[5] Notably, the Bureau is specifically required by statute to prescribe regulations governing furnishers. *See* 15 U.S.C. § 1681s-2(a)(8)(A). There is no analogous statutory mandate compelling the Bureau (or any other agency) to prescribe regulations governing CRAs, and to date no analogous regulations have been promulgated.

Second, the district court suggests that "creditors are 'in a better position to determine the validity' of a debt instrument they themselves hold than CRAs." *Sessa*, 2021 WL 6052134, at *8. Whether or not this is true, it is not a persuasive reason to categorically exempt CRAs from reasonable-procedures liability for so-called legal inaccuracies. CRAs still have a statutory obligation to use reasonable procedures to assure that consumer reports are accurate. To the extent that assessing certain legal issues imposes a significant burden on CRAs, that concern could be taken into account in determining what procedures are "reasonable," which requires balancing the potential harms from inaccuracies with the costs imposed on CRAs. *E.g.*, *Wenning v. On-Site Manager, Inc.*, No. 14-cv-9693, 2016 WL 3538379, at *16 (S.D.N.Y. June 22, 2016).

## D. Any inaccuracy in a consumer report, whether factual or legal, is sufficient to serve as a predicate element of FCRA liability.

The district court correctly observed that "the overwhelming weight of authority holds that a credit report is … inaccurate either when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect on credit decisions." *Sessa*, 2021 WL 6052134, at *6; *see also Grayson v. Equifax Credit Info. Servs.*, No. 18-cv-6977, 2021 WL 2010398, at *8 (E.D.N.Y. Jan. 29, 2021)

(collecting cases). This rule should govern regardless of whether the inaccuracy is factual or legal.

Here, TransUnion incorrectly reported that Sessa owed a substantial balloon payment at the end of the lease and thus overstated the total amount Sessa owed on the lease. Whether that error is best described as factual or legal, the consumer report was thus clearly incorrect in describing an important aspect of the debt owed by Sessa, including the amount she owed. *See Sessa*, 2021 WL 6052134, at \*7 (referencing "inaccurate amounts" as one example of patently incorrect information (quoting *Rodas v. Experian Info. Sols., Inc.*, No. 19-CV-07706, 2020 WL 4226669, at \*2 (N.D. Ill. July 23, 2020), *aff'd sub nom. Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562 (7th Cir. 2021)). Because the consumer report was incorrect, Sessa has satisfied her threshold burden of showing that her consumer report contained an inaccuracy.

## II.  The FCRA Requires Credit Reporting Agencies to Maintain Reasonable Procedures to Assure the Accuracy of Information Provided by Furnishers.

The district court also erred in holding that "CRAs can only be held liable for FCRA claims when the information reported does not match the information furnished." *Sessa*, 2021 WL 6052134, at \*8. According to the court, "TransUnion reported the exact information it received from a data

furnisher," and, therefore, Sessa "cannot establish *as a matter of law* that TransUnion reported inaccurate information." *Id.* at *9 (emphasis added).

This holding is flawed for two reasons. First, the mere fact that a CRA correctly reports the information relayed to it by a furnisher does not render that information accurate. Therefore, a CRA's reliance on a furnisher is not a proper basis to reject a reasonable-procedures claim at the threshold level, without ever assessing the reasonableness of the procedures used by the CRA. Second, while the fact that a CRA relied on an accredited furnisher may constitute *some* evidence of the reasonableness of its procedures, whether those procedures are reasonably designed to assure the maximum possible accuracy of the information in a consumer report is a fact-intensive question that usually cannot be resolved at summary judgment.

A. **Information provided by a furnisher is not *per se* accurate.**

The fact that information is provided to a CRA does not categorically make that information "accurate." There is simply no reason to believe that information provided to a CRA by a furnisher is always "free from error" or

"conforming exactly to the truth."[6] Furnishers can—and do—provide CRAs with information that has errors, or is "inaccurate" under any plausible definition of that term. Not surprisingly, courts have routinely held that CRAs can be held liable for inaccuracies in consumer reports that originated with third parties. Any other rule would be contrary to the statutory text, allowing CRAs to evade reasonable-procedures liability even when their procedures were plainly inadequate to assure maximum possible accuracy of the information in consumer reports, would expose consumers to inaccurate credit reporting, and would vitiate the remedial purposes of the FCRA.

In *Cortez*, the Third Circuit held that TransUnion could not evade reasonable-procedures liability simply because it correctly reported information it pulled from a government database: "Congress surely did not intentionally weave an exception into the fabric of the FCRA that would destroy its remedial scheme by allowing a credit reporting agency to escape responsibility for its carelessness whenever misleading information finds its way into a credit report through the agency of a third party." *Cortez*, 617

---

[6] *Accurate*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/accurate ("1: free from error especially as the result of care an accurate diagnosis 2: conforming exactly to truth or to a standard").

F.3d at 710. Rather, the court held that TransUnion was required to compare the information provided by the third party to its "own records" and screen for "discrepancies." *Id.*

District courts in this Circuit have reached the same conclusion. One court rejected as "misguided" a defendant's argument that it could not be held liable under section 1681e(b) because it relied on "a well-established, reputable, and reliable third party vendor." *Watson v. Caruso*, 424 F. Supp. 3d 231, 246 (D. Conn. Dec. 2, 2019). "If this were the case," the court reasoned, "then [CRAs] could insulate themselves from liability under section 1681e, so long as they outsource their work to contractors ... The FCRA's remedial purpose could not be achieved under that theory." *Id.* Another court rejected a defendant's argument that it could not be held liable under section 1681e(b) "as a matter of law because it relied on records obtained from [the New York Department of Corrections]." *Wilson v. Corelogic SafeRent, LLC*, No. 14-cv-2477, 2017 WL 4357568, at *4 (S.D.N.Y. Sept. 29, 2017). The court reasoned that "[t]o accept [the defendant]'s argument that reliance on information obtained from a governmental agency, regardless of context, categorically insulates a CRA from liability, would severely undermine FCRA's remedial purpose." *Id.*

Accordingly, the district court's holding that TransUnion's pass-through reporting of the information it received from Hudson Valley, the furnisher, is "all [TransUnion] needs to … absolve itself of FCRA liability," *Sessa*, 2021 WL 6052134, at *9, finds no support in the law. Indeed, the sole case the court cites for that proposition, *Frydman v. Experian Info. Sols., Inc.*, No. 14-cv-9013, 2016 WL 11483839 (S.D.N.Y. Aug. 11, 2016), supports the opposite conclusion. The court there held that "[a] jury reasonably could conclude" that the credit reporting agency "report[ed] an inaccurate debt." *Id.* at *12. It reached this conclusion despite finding that the CRA correctly reported information it received from furnishers, all of which were "generally reliable sources of consumer credit information." *Id.* at *13. In other words, unlike the district court in this case, the *Frydman* court properly rejected the suggestion that a CRA's reliance on furnishers allowed it to dispose of plaintiff's reasonable-procedures claim on the threshold question of whether the consumer report contained an inaccuracy.

To be sure, a credit reporting agency's reliance on a reputable furnisher, as discussed below, may be relevant to the ultimate question of whether the consumer reporting agency followed reasonable procedures to assure maximum possible accuracy of the information contained in a

consumer report. But that reliance is *irrelevant* to the threshold question of whether a consumer report contains an inaccuracy.

## B. Reliance on a furnisher to provide accurate information is not *per se* reasonable.

This Court should reverse because whether TransUnion followed reasonable procedures to assure maximum possible accuracy of the information in Sessa's consumer report is a fact question that cannot be resolved at summary judgment. A credit reporting agency's reliance on a reputable furnisher may be evidence that the credit reporting agency followed reasonable procedures. However, contrary to the district court's holding, reliance on a furnisher does not *categorically* insulate a credit reporting agency from reasonable procedures liability under section 1681e(b). Whether TransUnion's procedures for screening furnishers were in fact reasonable and whether an error concerning the mischaracterization of the residual value of the car as a "balloon payment" could have been detected through other reasonable procedures that TransUnion failed to adopt are all fact questions that must be resolved.

In contrast to the district court's ruling, even courts that have held that a credit reporting agency may rely on information furnished by a third-party source make clear that the reliance is only appropriate if, at minimum, the source is reputable and there is no other reason to discredit

the information. *E.g.*, *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1240 (10th Cir. 2015) (holding a CRA can rely on information furnished by source as long as it is "not inaccurate on its face, inconsistent with information the CRAs already had on file, or obtained from a source that was known to be unreliable"); *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 972 (7th Cir. 2004) (holding a CRA can rely on information "received from a source that it reasonably believes is reputable ... unless the [CRA] receives notice of systemic problems with its procedures"); *see generally* Fed. Trade Comm'n, *40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations* 67 (2011), https://go.usa.gov/xupMd (noting that a CRA must use "a source that it reasonably believes to be reputable").

Thus, a CRA's reliance on a furnisher is never, in and of itself, sufficient to show that the CRA followed reasonable procedures. Indeed, a CRA's reasonable-procedures responsibilities are not limited to screening furnishers. For example, CRAs are required to "establish procedures to avoid reporting information from its furnishers that appears implausible or inconsistent" and avoid "obvious logical inconsistencies, such as a credit account opened when the consumer was known to be a minor." *Id.* at 67-69*; see also Cortez*, 617 F.3d at 709 (holding that "inconsistencies between

two different reports concerning a single consumer" were sufficient evidence that procedures were unreasonable).

Put simply, a CRA's reliance on information provided by a furnisher or other source is not "*per se* reasonable for purposes § 1681e(b)." *Watson*, 424 F. Supp. 3d at 247 (quoting *Wilson*, 2017 WL 4357568, at *4). Even reliance on information received from a government agency is insufficient to "categorically insulates a CRA from liability." *Id.* (cleaned up). Rather, "'reasonableness' under [the] FCRA requires 'context-specific balancing.'" *Id.* (quoting *Wilson*, 2017 WL 4357568, at *4); *see also Wenning*, 2016 WL 3538379, at *16 ("Assessing reasonableness generally requires 'balancing the potential harm from inaccuracy against the burden on the agency of safeguarding against such inaccuracy.'" (quoting *Houston v. TRW Info. Servs., Inc.*, 707 F. Supp. 689, 693 (S.D.N.Y. 1989)).

This balancing act generally does not lend itself to resolution at summary judgment: "Whether or not the credit reporting agency followed reasonable procedures 'will be a jury question in the overwhelming majority of cases.'" *Wenning*, 2016 WL 3538379, at *16  (quoting *Gorman v. Experian Info. Sols., Inc.*, No. 07-cv-1846, 2008 WL 4934047, at *4 (S.D.N.Y. Nov. 19, 2008)) (collecting cases); *see also Cortez*, 617 F.3d at 709 ("[T]he reasonableness of a [CRA]'s procedures is 'normally a question

for trial unless the reasonableness or unreasonableness of the procedures is beyond question.'" (quoting *Sarver*, 390 F.3d at 971)); *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001) ("The determination of the 'reasonableness' of the defendant's procedures ... is treated as a factual question even when the underlying facts are undisputed. It therefore cannot be resolved on summary judgment unless the reasonableness or unreasonableness of the procedures is beyond question.").

In short, the fact that TransUnion relied on information provided by a furnisher does not establish the absence of a fact issue as to whether TransUnion followed reasonable procedures. Determining whether TransUnion followed reasonable procedures is a fact-intensive question that must be resolved by a jury. Accordingly, this Court should reverse and allow the trier-of-fact to assess whether TransUnion's procedures comport with section 1681e(b) of the FCRA.

## CONCLUSION

For these reasons, the judgment of the district court should be reversed.

May 5, 2022

Respectfully submitted,

/s/ Ryan Cooper
Seth Frotman
   *General Counsel*
Steven Y. Bressler
   *Acting Deputy General Counsel*
Laura Hussain
   *Assistant General Counsel*
Ryan Cooper
   *Counsel*
CONSUMER FINANCIAL PROTECTION
   BUREAU
1700 G Street NW
Washington, DC 20552
(202) 702-7541
ryan.cooper@cfpb.gov

Joel Marcus
   *Deputy General Counsel*
FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3350
jmarcus@ftc.gov

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with Federal Rules of Appellate Procedure 32(a)(5) and (6) because it has been prepared in 14-point Georgia, a proportionally spaced font.

I further certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) and Local Rule 29.1(c) because it contains 6,645 words, excluding the portions exempted by Federal Rule of Appellate Procedure 32(f).

May 5, 2022                    /s/ Ryan Cooper
                               Ryan Cooper